## Ward's Central & Pacific Lake Company v. Henry K. Elkins.

*Transportation contracts: Article of merchandise: Measure of damages.* The measure of damages for the breach of a contract to transport from one market to another an ordinary article of merchandise always to be found in the market, is the excess in value at the place of destination at the time when by the contract the merchandise should have arrived there, beyond its value at the place of shipment, with the agreed freight added and such expenses as under the contract the shipper would have incurred in loading and unloading, etc., had the contract been performed.

*Agreement to carry by vessel: Transportation by rail: Unreasonable expense.* On breach of a contract to carry by vessel an ordinary article of merchandise, the shipper will not be justified in procuring shipment by rail if the railroad prices would render it unprofitable. A person has no right to put others to an expense of such a nature as he would not as a reasonable man incur on his own account.

*Transportation contracts: Duty of shipper: Immediate action: Speculating on future chances.* In case of an article of specific utility for preservation,

where the circumstances are such as to justify employing any transportation which is accessible, and to render the difference in cost in transportation a proper measure of damages, the shipper is bound to seek other means of carriage immediately at hand, and is not permitted to await his leisure and speculate on future chances by making piecemeal shipments.

*Evidence: Agency: Steamboat clerk: Statements.* The statements of a steamboat clerk, not shown to occupy any position of general agency, are not admissible in evidence to bind the corporation employing him, as to matters not within the scope of his employment.

*Evidence: Contracts: Inferences: Actual terms.* Questions put to prove a contract, which call for the inferences of the witness rather than the actual terms of the contract, are improper.

*Submitted on briefs June 21.    Decided October 4.*

Error to Superior Court of Detroit.

*Moore, Canfield & Warner,* for plaintiff in error, as to the evidence of statements by the steamboat clerk, cited: *14 Mich.,* 265; *F. & M. Bank v. Whitfield,* 24 *Wend.,* 419; *Luby v. Hudson R. R.,* 17 *N. Y.,* 131; *Weeks v. Lowry,* 8 *Barb.,* 530; *Blendon v. Nicolay,* 4 *E. D. Smith,* 14; *Ray v. Smith,* 2 *Hun,* 597; *Chapman v. Erie R. R.,* 55 *N. Y.,* 579; and on the measure of damages: *Brown v. Foster,* 51 *Penn.,* 165; *Brackett v. McNair,* 14 *Johns.,* 170; *O'Connor v. Foster,* 10 *Watts,* 418; *Cutting v. G. T. R. W. Co.,* 13 *Allen,* 318; *Spring v. Haskill,* 4 *Allen,* 112; 9 *C. B. (N. S.),* 632; *Wilson v. L. & G. R. R.,* 6 *H. & N.,* 211; *Deming v. R. R.,* 48 *N. H.,* 468; *Harrison v. Stewart, Taney's Decis.,* 485; *R. R. v. Plank Road Co.,* 71 *Penn.,* 354; *R. R. Co. v. Henry,* 14 *Ill.,* 157; *Ward v. Central R. R.,* 47 *N. Y.,* 29.

*Alfred Russell,* for defendant in error, argued that the proper measure of damages was the difference between the contract price and the price actually paid for transporting by rail, and cited: *Grund v. Pendergast,* 58 *Barb.,* 216; *Ogden v. Marshall,* 4 *Seld.,* 340; *The Flash,* 1 *Abb. Adm.,* 119; *The Zenobia, Id.,* 80; *Sedg. Dam., (4th ed.)* 402–5; *Loud v. Campbell,* 26 *Mich.,* 239.

CAMPBELL, J:

Elkins recovered damages against the plaintiff in error for failure to carry certain salt from Bay City to Chicago, in November, 1874.

Elkins was a salt dealer in Chicago, and sued upon an alleged contract whereby the plaintiff in error was to carry three cargoes of salt, of about seventeen thousand bushels in all, only one of which was taken. The cargoes were to be called for from the 15th to the 20th of November. The regular business of plaintiff in error was between Buffalo and Duluth, with power, as was claimed, to do business elsewhere on the lakes.

Elkins gave evidence tending to show that he could not get vessels to carry the salt after plaintiff's default. He had it taken by rail to Chicago in lots as he wanted it, from January to some time in April, 1875, and was allowed to recover the difference between the price agreed on with plaintiff and what he paid for the transportation by rail. This is the chief error complained of.

We do not see upon what rule this recovery can be justified. The damages to which Elkins was entitled, if any, would be such as would have placed him in the position he would have occupied had the salt been taken to Chicago by vessel as agreed. It was not an article of specific utility for preservation, but an article of merchandise, and only valuable as such. The only advantage he could have gained by a timely shipment according to contract would have been the excess of the value of salt in the Chicago market at the date when it should have arrived, beyond what it was worth in Bay City and the expenses of loading, shipment and delivery at his warehouse in Chicago. If there was no such excess in value at that time, then he was not damaged. If there was such an excess, then he was entitled to that, and nothing more.

He would not have been justified in procuring shipment by rail, if the railroad prices would have rendered it unprofit-

able.  There are, no doubt, cases where property is of such a nature, or where the necessity of having it at a certain point is so imperative, that the circumstances may justify employing any transportation which is accessible, and may render the difference in cost of transportation a proper measure of damages.  But this can never be proper in regard to ordinary articles of consumption, always to be found in the market, and only valuable to the owner for their merchantable qualities.    A person has no right to put others to an expense of such a nature as he would not as a reasonable man incur on his own account.—*Le Blanche v. London & N. W. R. W. Co., L. R., 1 C. P. D., 286.*

When such a necessity exists, it is maintained only as a necessity, and allowed because of its urgency.    If such a rule is ever applicable, it cannot be satisfied by allowing a party, instead of seeking other means of carriage immediately at hand, to await his leisure and speculate on future chances, and make shipments piecemeal, as was done here.

It is altogether likely that after the close of navigation, and as the winter goes on, prices may rise so as to warrant shipments by rail, when this would not have been profitable earlier;   and it may be possible, after paying railroad rates, to make as much profit as if the salt had been received by steam on the lakes and put in market in the fall at fall rates. It would be absurd to say that these deliberate winter shipments were necessitated or justified by a failure to get shipping facilities during the season, or near the close of navigation in November.    It would be equally unjust to allow the owner of the salt to speculate on the chances of a market without risk to himself.

The rule of damages should have been as previously indicated, and should in no case exceed the damages actually incurred.    A party who has lost nothing by a breach of contract is not entitled to damages of a substantial character.

We think there was also error in allowing the statements of a steamboat clerk, who was not shown to occupy any

position of general agency, to be received in evidence to bind the company; and that improper questions were allowed, which called for the inferences of a witness rather than the actual terms of the contract in suit. But we do not enlarge upon these, as they are not likely to arise again, and the main issue is upon the question of damages and the real terms of the agreement, as absolute or conditional.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.